Filed Feb. 27, 1895.

---

No. 17,094.

## The Wall Street Methodist Episcopal Church v. Johnson et al.

TRUST.—*Trustees.—Church Cemetery.—Incorporation.—Appointment of Trustees.—Acquiescence.—Quieting Title.—Injunction.—Accounting.—* Where real estate was purchased by a church, the conveyance being made to three named persons as "managers and trustees in trust" for the church, for cemetery purposes, and two years later an act of incorporation was procured by the common consent of the grantor,

grantees, and the church authorities, enlarging the powers of the original grantees and providing that they might provide, by rule, for the selection of their successors, in pursuance of which they enacted a by-law authorizing the board of trustees of the church to fill all vacancies that might occur in the cemetery board, which was done, and there was acquiescence by the church authorities for more than fifty years, a suit by the church against the cemetery trustees to quiet title to the cemetery, to restrain the trustees from interfering therewith, and for the appointment of new trustees and to compel an accounting to them will not lie, although, in a proper action alleging their trusteeship, the defendants might be required to give an account of their proceedings.

From the Floyd Circuit Court.

*J. K. Marsh* and *A. Dowling,* for appellant.

*S. S. Johnson, J. H. Stotsenburg* and *E. B. Stotsenburg,* for appellees.

DAILEY, J.—This action is based upon an amended complaint, filed by appellant, The Wall Street Methodist Episcopal Church, of the city of Jeffersonville, Clarke county, Indiana, against the appellees, for the appointment of three trustees of a certain cemetery therein described, to compel an accounting and payment to such new trustees of $25,000 of revenues derived from the sale of lots, to quiet the title of appellant in the cemetery and restrain appellees from interfering therewith.

In the amended complaint the substance of the allegations is as follows: That on March 20, 1838, one Athanasius Wathen, then the owner of a certain tract of land containing 10½ acres, in said county, described in the complaint, conveyed the same by deed, in which his wife, Elizabeth, joined to William D. Beach, James Keigwin and Charles Sleade, all of whom were then and there members of the Methodist Episcopal church, at Jeffersonville, in said county; that by the terms of said conveyance, a copy of which is set out, the tract was to be held by said Beach, Keigwin and Sleade in trust for the

use of the Methodist Episcopal church for the purpose of a burying ground; that said Beach, Keigwin and Sleade accepted said trust and took possession of the land, and the whole of it was, by the consent of said Wathen, said trustees and said church, used and appropriated as a cemetery; that said tract, or a large part thereof, was by said Beach, Keigwin and Sleade platted into burial lots, with walks and avenues suitably laid out and enclosed by them with a substantial fence; that they sold lots to divers persons and received money therefor; that they built and maintained vaults for the reception of dead bodies on said land; that when said deed was executed there was but one church in Jeffersonville known as the Methodist Episcopal church, and by the description in said deed the Wall Street Methodist Episcopal Church was meant by the grantors; that since said deed was made, said land has increased in value; that appellant is yet the sole beneficiary of the equitable title, and only the legal title, with a managing power limited by said deed, was vested in said Beach, Keigwin and Sleade, who are long since dead; that no successors in said trust have at any time been appointed, and the trust for fifteen years past has been vacant; that the appellees, Johnson, Ingram and Jacobs have wrongfully and unlawfully taken and kept possession of said cemetery for fifteen years past; that for the same time they have been taking the rents and profits, amounting to $15,000 or more; that without authority they have sold burial lots to divers persons and received $10,000 in money therefor; that without authority they have caused lots in the cemetery to be used for burial purposes and unlawfully undertaken to act as managers and owners of the cemetery; that they have usurped the office and duties of trustees for said cemetery to the appellant's damage in the sum of $25,000, and deny appellant's title to said land, and refuse to recog-

nize its equitable title thereto or account to it for the moneys received and collected by them. Then follows the prayer for relief.

The appellees answered this complaint in two para- graphs. One was in general denial, and the other, num- bered one, was a special answer, the substantial aver- ments of which are as follows: The appellees admit the conveyance by Wathen and wife, but expressly deny that said deed was made in trust for the use of the ap- pellant. They allege that after the deed was made said Beach, Keigwin and Sleade, being desirous that they and their successors might be incorporated for the pur- pose of establishing and perpetuating said cemetery at the place described in said deed, commonly known as Walnut Ridge, applied to the General Assembly of the State for corporate powers for that purpose; that on Feb- ruary 15, 1840, the Legislature passed an act to incor- porate the trustees of the Walnut Ridge Cemetery, which was approved by the Governor, and the said act is set out at length on page 94 of the local laws of the twenty- fourth session; that said act provided that said Beach, Keigwin and Sleade should be a body politic under the name and style of the Walnut Ridge Cemetery, with power to lay out and ornament the grounds, dispose of and arrange burial lots, and make by-laws, rules and regulations relative to the election of trustees, managers and their successors, and the appointment of suitable officers and agents, with their duties and compensation.

They were further empowered to make such rules from time to time for the government of lot holders and visit- ors as they might deem necessary, and to purchase more ground not exceeding fifty acres; that while it was true that Beach, Keigwin and Sleade died long since, it was not true that no successors in said trust have been elected, or that it has been vacant for fifteen years. On

the contrary, on January 1, 1841, the trustees of said cemetery made a by-law relative to the election of the trustees and their successors, whereby it is provided that the trustees of the Methodist Episcopal Church of Jeffersonville should have the power to and should fill all vacancies occurring in their number; that while said by-law was in force these appellees were duly elected, and ever since their election have been actively and lawfully engaged in the proper performance of their duties; that it is not true that the appellees wrongfully and unlawfully took possession of said cemetery, and for fifteen years past kept the profits thereof to the amount of $15,-000, or any other sum, or that they ever refused to account for all moneys received by them; that, on the contrary, their possession was lawful and they had so managed their trust that those who bury their dead in that cemetery are assured of continued and watchful protection of the dead, that their bodies will not be stolen; that the grounds have been enlarged, beautified and adorned by them; and the appellees, as well as Beach, Keigwin and Sleade platted the same into burial lots with walks and avenues; but the appellees, as trustees, and not their predecessors, built the fences around said cemetery, and constructed and maintained the vaults for the reception of bodies awaiting burial; that the appellees never had rents and profits of the cemetery amounting to $15,-000, or any other sum, but, on the contrary, every dollar of the money received has been faithfully applied to lawful cemetery purposes, and never, at any time, used for gain or revenue.

The appellees concede that the act of incorporation was obtained at the request of the church, and its object and intent was to provide a cemetery, not as a source of profit to any one, but as a resting place for the dead.

And that while the appellees deny the existence of any vacancy in said trust, they aver a willingness at any time to make an exhibit to any legally authorized person or corporation, or to the court in any proper proceeding, a full and exact statement of every act done and of every dollar expended by them as trustees.

Appellant filed its demurrer to the paragraph of special answer, which was overruled and an exception taken. The reply to this paragraph, if any was filed, is not copied in the transcript.

The cause was submitted to the court for trial, and by the request of plaintiff it made a special finding of the facts, and as a conclusion of law thereon found for the defendants.

The appellant excepted to the conclusion of law. A motion for a new trial was overruled by the court, to which the appellant excepted, and judgment was then rendered on the finding, from which this appeal is prosecuted.

Obviously, the theory of the amended complaint, on which the appellant's cause of action must stand or fall, is that under the Wathen deed, the conveyance was in trust to Beach, Keigwin and Sleade, for cemetery purposes; that the trust was accepted; that the appellant was, and still is, the sole beneficiary with the equitable title, and only a managing power, limited by the deed, was vested in Beach, Keigwin and Sleade, who were dead before this suit was brought; that no successors have ever been appointed, and the trust for fifteen years past has been vacant.

Indeed, it is averred in the amended complaint that they, as such trustees under the deed, took possession of the tract for the uses and purposes stated in the deed; and, as such trustees, with the consent of the original grantors and the appellant, made and sold lots for burial

purposes, platted walks, enclosed the cemetery, and built vaults; that the appellant has the equitable title, but the legal title with a general power of management was vested in said Beach, Keigwin and Sleade; that these trustees are dead, and no successors have been appointed, and the appellees have usurped the office and duties of trustees.

In the appellant's brief there is a complete departure from this theory, and an effort to substitute another and entirely different basis for the support of its case. It asserts that the trust is a dry and naked one, no powers of any kind being conferred on the trustees, and therefore the deed operated as a direct conveyance to the appellant. Further on in the brief, it is declared that the appellant, with its own means, purchased the tract of land and caused the *mere naked legal title* to be conveyed to Beach, Keigwin and Sleade, to be held by them without any powers of management, control or disposition for the exclusive use of the appellant, and that these grantees were not trustees at all, but its agents merely in the trust. It thus appears that the appellant has abandoned its cause as made by the pleadings, and on which alone it must seek a reversal of the judgment of the trial court.

. If the complaint had set out the deed, and then had averred the facts alleged in the brief, a very different case in law and an entirely different issue or set of issues might have arisen. Or, if another paragraph of the complaint had been framed to present the questions raised in the brief, the court could then have considered those attempted to be raised here.

We are not unmindful of the fact that a passive or dry trust is one which requires the performance of no duty by the trustee to carry out the trust, but by force of which the legal title merely remains in the trustee. 2 Bouv. L. D., p. 615.

And that in the case of a *simple* or *dry trust*, the *cestui que trust* is entitled to the actual possession and enjoyment of the property, and to dispose of it, or to call upon the trustees to execute such conveyances of the legal estate as he directs.    2 Perry on Trusts, section 520.

But we do not consider the case presented by this complaint as coming within the operation of that rule for the reasons already stated.

In support of the contention that the Wathen deed operated as a direct conveyance to the appellant, its learned counsel cite sections 180, 181 and 182 of the R. S. 1843, chapter 28, p. 447.   But it will be remembered that this deed was executed on the 20th day of March, 1838.   At that time the act of January 24, 1831, concerning trusts was in force, and so remained until the revised code of 1843 was enacted, and the sections referred to and relied on by the appellant then had no existence.   The provision in regard to declarations of trusts was continued in force in the R. S. 1838, and is contained in section 5 of the act, on p. 312, and merely requires it to be in writing, signed by the party who may be enabled to discharge said trust.

But there is another consideration.   It appears that on the 15th day of February, 1840, an act was passed by the General Assembly of this State, incorporating said trustees, Beach, Keigwin and Sleade, as trustees of Walnut Ridge Cemetery, enlarging their powers and providing for the election of their successors, and that the appellant assented to the provisions of said act by electing the appellees as their successors.

In answer to this, the appellant urges that the trust created by the Wathen deed was strictly a personal one, and that those trustees could not through an act of the Legislature, or by any other means, convert such personal trust into a corporate one; that when the deed was

made, if a vacancy in the position of trustee had occurred, a court of chancery would have had power to fill the vacancy; that by the act of 1840, *supra*, the trustees were empowered to make any rule they saw fit on the subject of the selection of their successors, and to manage and control the cemetery of which they were made trustees; powers which had no existence under the deed from which they were compelled to deduce all their authority.

Appellant further says that the act of the trustees in procuring the passage of this special statute was in contravention of their trust, and the act itself was inoperative to reduce the estate or impair the rights of the appellant.

In considering this contention, it may be premised that in the deed which antedates the act of 1840, nearly two years, the exact words of the conveyance are: "William D. Beach, James Keigwin and Charles Sleade, managers and trustees in trust for the Methodist Episcopal Church for the uses and purposes hereinafter mentioned of the other part, in the county of Clarke, State of Indiana."

The report of the quarterly conference of the Methodist Episcopal Church shows that the property cost $550, but that it was bought on credit, and as late as 1850 had not been paid for. The report for 1854 recites that a charter was obtained in 1840, and that the trustees organized and have been acting under this charter. The reports and evidence, both for the appellant and appellees, show that the act of 1840 was procured by the common consent of the grantor, the grantees, and the Wall Street Methodist Episcopal Church.

The evidence also shows that the ground was purchased by the trustees for the church, but designed for the accommodation of the community generally, and that as early as 1839 the trustees declared, in a printed

pamphlet, that an application would be made to the Legislature during its next session for an act of incorporation and other privileges.

The act of February 15, 1840, provides that Beach, Keigwin and Sleade, the persons named as trustees and managers, should make by-laws and regulations as to the election of trustees and officers. This was the law governing the cemetery in controversy as early as 1840, and it has been the one controlling the trust ever since. It is the only act on the subject, and has never been repealed, altered or amended. It controls the parties to this case and the affairs and status of the Walnut Ridge Cemetery. It was enacted with the knowledge and consent of the grantor and grantees to the Wathen deed, and for more than half a century has been acknowledged as the rule and guide of the appellant and the appellees and their predecessors.

As soon as it was passed, the trustees named in the deed and in this statute, recognized it by enacting a by-law, as follows: "Resolved, that the board of trustees of the Methodist Episcopal Church in Jeffersonville shall have power and is hereby authorized to fill any vacancy that may or shall occur in this board."

Ever since then the trustees have been so elected and have so acted under said act and by-law, and the appellant has always elected them.

If this had been a suit by the trustees of the appellant against the appellees alleging their trusteeship over the cemetery, claiming that, as such trustees, they had failed and refused to make any report of or accounting for their proceedings as trustees, although requested, the cause would have been different.

We are of the opinion that the special paragraph of answer is sufficient and is abundantly sustained by the

evidence in the record, and that the law and facts are with the appellees.

The judgment of the court below is affirmed.

